# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JOSEPH GANIM** and | : | DOCKET No. 3:17-1303 |
| **JOE GANIM 2018,** | : | |
|      Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| **MICHAEL J. BRANDI**, in his official | : | |
| capacity as Executive Director and General | : | |
| Counsel of the State Elections Enforcement | : | |
| Commission, and | : | |
| **GEORGE JEPSEN**, in his official capacity | : | |
| as Attorney General of the State of | : | |
| Connecticut; | : | |
|      Defendants | : | August 2, 2017 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Joseph Ganim, a potential Democratic candidate for Governor of the State of Connecticut election, and "Joe Ganim 2018", a duly formed Exploratory Committee pursuant to Connecticut General Statue, bring this action for declaratory and injunctive relief, alleging as follows:

## INTRODUCTION

1. This case challenges the constitutionality of a 2013 amendment to two provisions of Connecticut General Statute § 9-706.  Public Act 13-180 added the following provision to 9-706(a):

    (5) Notwithstanding the provisions of this subsection, no candidate may apply

>to the State Elections Enforcement Commission for a grant from the fund under the Citizens' Election Program if such candidate has been convicted of or pled guilty or nolo contendere to, in a court of competent jurisdiction, any (A) criminal offense under this title unless at least eight years have elapsed from the date of the conviction or plea or the completion of any sentence, whichever date is later, without a subsequent conviction of or plea to another such offense, or (B) *a felony related to the individual's public office*, other than an offense under this title in accordance with subparagraph (A) of this subdivision.

That Public Act also amended subsection (b) of 9-706, which requires a candidate applying to the Citizen Election Program ("CEP") for public campaign funds to execute an affidavit, certifying that:

>(12) The candidate has never been convicted of or pled guilty or nolo contendere to, in a court of competent jurisdiction, a felony related to the individual's public office, other than a criminal offense under this title in accordance with subdivision (11) of this subsection.

2. The CEP provides for public funding of state political campaigns. Its goals are to: 1. Allow candidates to compete without reliance on special interest money; 2. Allow statewide officers and legislators the ability to make decisions free of the influence of, or the appearance that they have been influenced by, donations from special interests; 3. Restore public confidence in the electoral and legislative processes; 4. Increase meaningful citizen participation; and 5. Provide the public with useful and timely disclosure of campaign finance.

3. This amendment seeks to prohibit candidates for state office from receiving funds under the CEP if they have been convicted of a felony related to a public office. This amendment, which

restricts otherwise eligible office seekers who have been convicted of a felony in the past from participating in the CEP, was added in 2013. This prohibition is absolute and life-long, with no mechanism for review provided in the statute.

4. The CEP provides a complex statutory scheme for public funding of a state candidate's campaign if certain threshold requirements are met. It is as follows: If a candidate is running for the office of Governor, and the candidate raises $250,000 in donations of no more than $100 from at least 2,500 individual contributors, then, if otherwise qualified, that candidate can receive a grant of approximately $1,354,250 of public funds to spend towards a primary, and $6,500,400 of public funds to spend in the general election. These amounts are adjusted for inflation on a quadrennial basis. Grants are made to the candidate's committee. The qualifying candidate then cannot accept any other funds from any source whatsoever and also cannot spend in excess of these amounts.

5. Joseph Ganim was first elected Mayor of Bridgeport in 1991 and served 5 terms (over 11 years) in office. However, following an exhaustive federal investigation and prosecution in 2003 – some 14 years ago – Mr. Ganim was convicted of federal felonies related to his public office. Charges included: 18 U.S.C. § 1962(c); 18 U.S.C. § 1962(d); 18 U.S.C. § 1951; 18 U.S.C. §§ 1341 & 1346; 18 U.S.C. § 666(a)(1)(B); 18 U.S.C. § 371; and 26 U.S.C. § 7206(1).

6. In 2010, after serving over six years in prison, Mr. Ganim was released and returned home to

3

start rebuilding his life. He restored his voting rights and renewed his status as an elector of the State of Connecticut (a requisite to run for public office). In 2015, Mr. Ganim ran for Mayor in the City of Bridgeport–again–and was re-elected Mayor of Bridgeport on November 3, 2015. As Mr. Ganim continues to serve in elected office, he fights for the City of Bridgeport, as well as "second chances" for all individuals. Mr. Ganim is further committed to open and transparent government – starting directly in Bridgeport.

7. Mr. Ganim is exploring a run for the Office of Governor in the 2018 Connecticut Election and has created an Exploratory Committee for Statewide Office—"Joe Ganim 2018."

8. Mr. Ganim is a viable Democratic gubernatorial candidate.  He is a registered Democrat and has run for office as a Democrat in the past and will do so in the future. There are over 800,000 Connecticut voters registered as Democrats.  Over 45,000 of them live in Bridgeport where Mr. Ganim currently serves as Mayor. He has been elected as Mayor of Bridgeport—Connecticut's largest city—six times. He received over 11,000 votes in the last general election, winning with approximately 60% of the vote, and having been elected Mayor six times, has never lost as a candidate for Mayor in a general election. Mr. Ganim was also the unanimously endorsed nominee of the Democratic Party for the office of Connecticut Lieutenant Governor in 1994, where he and the Democratic candidate for Governor narrowly lost.

9. On April 7, 2017, Mr. Ganim petitioned the State Election Enforcement Commission ("SEEC") for a declaratory ruling that he was eligible to apply for financing through the CEP. On June 21, 2017 the SEEC issued a written ruling, based only upon the plain meaning of C.G.S. 9-706(a)(5), that Mr. Ganim will not be allowed to participate in the CEP.

10. At issue is an amendment to the statute that, as written, does not advance the governmental interests for creating the statute, and certainly does not meet the exacting scrutiny standard set forth in prior precedent. In fact, the amendment works contrary to the purpose and intent of the legislature in creating the CEP. Mr. Ganim has stated that should he decide to run for Governor, he seeks to do so without funding from special interest groups, lobbyists, or big donors.

11. Mr. Ganim's participation in the CEP would further the public goals the SEEC discloses for the CEP:

    a. He would be allowed to compete without reliance on special interest money;

    b. He would be allowed to make decisions free from the appearance that he has been influenced by donations from special interests;

    c. It would restore public confidence in the electoral and legislative processes as the public would know that no one is donating to his campaign in hopes of future favors; and

d. It would provide the public with useful and timely disclosure of Mr. Ganim's campaign finances.

12. The United States Supreme Court has recognized that allowing a candidate to use personal funds reduces the candidate's dependence on outside contributions and thereby counteracts the coercive pressures and attendant risks of abuse of money in politics.  Candidate use of CEP funding likewise reduces the candidate's dependence on outside contributions and thereby counteracts the coercive pressures and attendant risks of abuse of money in politics.

13. Because the amendment to the statute that prohibits Mr. Ganim from participating in the CEP does not advance the governmental interests of protecting the CEP and the public fisc, Mr. Ganim is seeking relief prohibiting the amendment's application to him and requiring the SEEC to allow him to apply for and receive the funding which he otherwise qualifies for under the CEP rules.

**JURISDICTION AND VENUE**

14. Plaintiffs bring this action under 42 U.S.C. § 1983 and also seek relief under 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 1988.

15. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(3) and 1343(a)(4).

16. Venue is properly within this district under 28 U.S.C. § 1391(b) because the defendants reside

in this district.

**PARTIES**

17. Plaintiff Joseph Ganim is a resident of Connecticut.

18. "Joe Ganim 2018" is the Exploratory Committee (as authorized under C.G.S. § 9-604) for Mr. Ganim's potential run for governor, and has a business address in Connecticut.

19. Defendant Michael J. Brandi ("Brandi") is a resident of Connecticut and is the Executive Director and General Counsel of the State Elections Enforcement Commission. This action is brought against Brandi solely in his official capacity as Executive Director and General Counsel. One of the Commission's duties is to administer and ensure implementation of the Citizens' Election Program.

20. Defendant George Jepsen ("Jepsen") is a resident of Connecticut and is the Attorney General of the State of Connecticut. This action is brought against Jepsen solely in his official capacity as Attorney General. As Attorney General, Jepsen enforces the orders of the State Elections Enforcement Commission.

**FACTUAL ALLEGATIONS**

21. The statutory provisions that are the subject of this case are C.G.S. § 9-706(a)(5)(B) and § 9-706 (b)(12). They were both added to the statute through Public Act 13-180.

22. The prohibition on funding for candidates who have been convicted of felonies relating to

7

holding public office was added to the statutes regulating the CEP in 2013.

23. Mr. Ganim is considering a run for Governor in the 2018 election cycle, and has established an exploratory committee for that purpose.

24. Mr. Ganim desires to fund a potential campaign through the CEP. On April 7, 2017 the SEEC informed him in Declaratory Ruling 2017-01 that he is not eligible for funding under the CEP due to the challenged amendment to the statute.

25. The CEP provides for the public funding of campaigns for the Office of Governor. Qualifying candidates can receive, in total (for both the primary and the general election) over $7,850,000 in public funds to spend on a campaign for Governor. In order to participate in the public financing program, a candidate must obtain the amount of "qualifying contributions" specified for the office for which he or she is running. C.G.S. §§ 9-702(b), et. seq. "Qualifying contributions" are monetary contributions of at most one hundred dollars from qualified contributors. C.G.S.§ 9-704. Candidates for Governor must receive an aggregate of $250,000 from at least 2500 different individuals. C.G.S.§ 9-704(a)(1).

26. Potential candidates for state office are allowed to raise CEP qualifying contributions during the exploratory phase of a campaign which then may be transferred to a candidate committee. C.G.S. § 9-704(a)(1)(B)(i).

27. "Joe Ganim 2018" has already collected hundreds of campaign contributions that are

Hassett & George, P.C.   945 Hopmeadow Street, Simsbury, CT  06070
(860) 651-1333  Fax (860) 651-1888  Juris No. 407894

qualifying under CEP rules and can be transferred to a Candidate Committee for Governor.

28. After an individual has met the qualifying contribution requirement, that candidate must file an affidavit agreeing to follow certain statutes as to campaign expenditures and the CEP. C.G.S. § 9-703.

29. With the affidavit, the candidate submits an application to participate in the CEP to the SEEC. C.G.S. § 9-706.

30. If a candidate is the major party endorsed candidate for governor following the party convention, or receives 15 percent of the votes of the delegates at the convention, or the candidate circulates a petition and obtains the required number of signatures, his or her committee is given a grant in the amount of $1,354,250.00 if there is a primary campaign. C.G.S. §§ 9-705 and 9-706.

31. Then following any primary, and upon receiving notification from the SEEC that a major party candidate has won his or her primary, the state comptroller is required to pay the additional CEP grant from public funds to the successful candidate's committee within forty-eight hours. C.G.S. § 9-708.

32. In the race for Governor, a majority party candidate who participates in the CEP and wins his or her primary will receive an additional CEP grant of public funds of more than $6,500,000 within forty-eight hours of the State Comptroller being notified of the result by the SEEC.

**Hassett & George, P.C.**   945 Hopmeadow Street, Simsbury, CT  06070
(860) 651-1333 Fax (860) 651-1888  Juris No. 407894

33. Connecticut has established limits on the amount any individual can contribute to a candidate who does not participate in the CEP.  An individual may only contribute $3,500 to a non-participating candidate's committee for the general election.  C.G.S. § 9-611.  While a participating candidate for Governor gets a single, immediate "contribution" of approximately $6,500,000, a non-participating candidate must raise funds in a series of much smaller contributions over a much longer period of time.

34. The rapid and substantial allocation of funds allows a candidate in the general election who receives funds from the CEP a distinct advantage over a candidate who does not.  A non-participating candidate who has to rely on traditional fundraising practices suffers an immediate funding disadvantage at the start of the campaign that will likely continue throughout the campaign. This is in part because he or she has no choice but to devote a substantial amount of time and resources to fundraise at the beginning stages as well as throughout the entire campaign.  While, by comparison, during this same period of time, his opponent (the participating candidate) with the use of this millions of dollars of public funds, purchase ad time on television, print ads, internet advertising, mailers and hire staff rapidly. The likely result will be that  the non-participating candidate, with no public funds, with have a limited ability to respond to the participating candidate's potentially overwhelming political speech because he or she must utilize the much slower traditional method of financing through

10

donations, having been denied the equal advantage of access to these designated public funds.

35. A participating gubernatorial candidate who raises $250,000 from 2,500 separate contributors will receive, and be able to spend the additional $6.5 Million without the need to raise another dollar. By comparison, if Mr. Ganim is denied the public funds, but he wants to be a financially competitive candidate for governor, he would, under one scenario, need to garner financial support from the same number of donors, in an average amount of $2,600 per donor in order to equal the single grant of public funds that the participating candidate receives from the CEP. In another scenario, Mr. Ganim would need to receive 65,000 donations of $100 each in order to be financially competitive against a publically funded opponent.

36. The limitation on the ability of Mr. Ganim—and others similarly situated otherwise eligible candidates—to access CEP funding exists regardless of his viability for public office, including his status as a major party candidate, current political office held, prior or current political support, the number of donors to his campaign, etc.

37. Mr. Ganim served as Mayor of Bridgeport, Connecticut, from 1991 until 2003.

38. The Plaintiff was convicted of felonies under the United States Code in 2003.

39. The Plaintiff was incarcerated in 2003 and released in 2010, and was re-elected the Mayor of Bridgeport, Connecticut in 2015.

40. The challenged amendment to the statute, even assuming it served a legitimate governmental

interest, is both over-inclusive and under-inclusive. In fact, it actually undermines the original legislative intent of the program.

41. The lifetime prohibition added by the amendment applies only to felonies associated with a person's public office. Any individuals convicted in the same events as Mr. Ganim who did not hold public office, even though participants in similar conduct, are not held ineligible to participate in the CEP by § 9-706.

42. A lobbyist convicted of bribing a state official would not be permanently prohibited, nor would a convicted murderer, rapist or child molester. Politicians convicted of felonies that are not related to their office are not prohibited, even if the felony implicates trust, such as fraud, tax evasion, perjury, or forgery.

43. If a person is convicted of a felony contained within Title 9, that felon is only precluded from participation in the CEP for (8) eight years. Such felonies include, among others, § 9-359a, False statement in absentee balloting; § 9-367, Tampering with ballot or voting tabulator; § 9-353, False statement, certificate or return; § 9-352, Tampering with tabulator by election official; § 9-364a, Acts prohibited in elections, primaries, referenda, caucuses and conventions ("Any person who influences or attempts to influence by force or threat the vote, or by force, threat, bribery or corrupt means, the speech, of any person in a primary, caucus, referendum convention or election…"); § 9-360, Fraudulent voting; and § 9-358, False swearing before

registrar, moderator, board or State Elections Enforcement Commission.

44. Any prior violation of Chapter 155, Campaign Financing (a felony as set out in C.G.S. § 9-623) which includes theft or misuse of CEP public financing dollars, precludes a candidate from receiving funds for only a period of eight years.

45. The amendment provides that a felony conviction under Title 9 which is also a felony related to public office would only result in a ban from participation in the CEP for eight years.

46. The provisions are not narrowly tailored as to the type of felony convictions that are included within the amendment, nor do they take into consideration any factors regarding the severity of the crime, time elapsed since the crime was committed, whether the individual has been rehabilitated, or any other factors that would tailor the denial of public funding to the State's legitimate interests. As a result, a person in their 20's who was properly elected to a local government office, who somehow gets convicted of a "*felony related to his public office*" would be banned for life from ever seeking public funds to run for state office due to the restrictions in the amendment. This includes the office of state representative or state senator.

47. The challenged amendment creates an irrebuttable presumption that any person convicted of a felony concerning their public office is not worthy to receive public funding now or at any time in the future.  The statute also fails to provide a hearing or appeal mechanism for a felon to show he or she is reformed, is rehabilitated, or should otherwise be permitted to access to

**Hassett & George, P.C.**    945 Hopmeadow Street, Simsbury, CT  06070
(860) 651-1333  Fax (860) 651-1888  Juris No. 407894

the public funding the CEP provides.  The amendment creates a blanket restriction regardless of the appropriateness of the restriction in a particular situation and creates an unfair hardship burdening the Plaintiffs.

48. Although the CEP has been characterized as a voluntary program in that no candidate is required to participate, the Plaintiffs have been barred from voluntarily participating in the program.

49. Since the Program's inception, no successful candidate for statewide office has won election without participating in the CEP.

**CLAIMS FOR RELIEF**

**COUNT ONE (Freedom of Speech)**

1 – 49.  Paragraphs one though forty-nine above are incorporated as paragraph one through forty-nine of this count as is more fully set forth.

50. The First Amendment to the United States Constitution, as applied to the States by the Fourteenth Amendment, protects the freedom of speech and freedom of association. Included within these protections is the right to participate freely in political activities, including elections, and to engage in political speech.  The challenged portions of the amendment, as described above, violate Mr. Ganim's First Amendment rights by limiting his political speech relative to other candidates who are able to qualify for CEP funding because, in the context of

a political campaign, monetary expenditures are a primary means by which political speech is expressed. The Plaintiffs challenge these provisions both facially and as applied.

51. Mr. Ganim's right to free speech is impaired because the amendment excluding him from funding is not rationally related to the claimed state interests in protecting the CEP or the public fisc, is not narrowly tailored and is unnecessarily harsh. It further undermines the CEP's goals of combating public corruption and promoting clean elections, and imposes an unfair and unnecessary burden on Mr. Ganim, and others by not allowing them to participate in the CEP.

**COUNT TWO (Equal Protection)**

1 – 49. Paragraphs one though forty-nine above are incorporated as paragraph one through forty-nine of this count as is more fully set forth.

50. The amendment violates Mr. Ganim's Constitutional rights as protected by the 14th Amendment because it discriminates against Mr. Ganim and those similarly situated by denying them an equal opportunity to apply for and receive public financing under the CEP.

51. The challenged portions of the amendment are both under-inclusive and over-inclusive concerning the persons they exclude from participation in the CEP. By being overly broad the statutory provisions violate the Plaintiffs' rights to equal protection under the law because they are not narrowly tailored to a sufficiently important governmental interest. The Plaintiffs challenge them both facially and as applied.

**COUNT THREE (Equal Political Opportunity; Freedom of Speech; Equal Protection)**

1 – 49.  Paragraphs one though forty-nine above are incorporated as paragraph one through forty-nine of this count as is more fully set forth.

50. Taken together, the free speech protections of the First Amendment and the equal protection interests of the Fourteenth Amendment guarantee candidates the right to equal political opportunity. An important element of equal political opportunity is fair and equal access to public financing for the purposes of running a political campaign for office that has been made available to other opposing candidates.

51. The asymmetrical funding scheme that the CEP would provide to a participating opponent violates the First and Fourteenth Amendment rights of Mr. Ganim in that it creates an unfair advantage in favor of one candidate over another by providing that candidate with the ability to present a particular political message, while not affording that same benefit to the other candidate, such as Mr. Ganim and those similarly situated.

52. The asymmetrical funding scheme that Mr. Ganim faces bolsters the political viability of his opponents while effectively reducing his viability below that which he would otherwise be able to achieve. This will have a chilling effect on his candidacy, and the fair election process.

53. The Plaintiffs challenge these provisions both facially and as applied.

**COUNT FOUR (Equal Protection-Due Process)**

1 – 49.  Paragraphs one though forty-nine above are incorporated as paragraph one through forty-nine of this count as is more fully set forth.

50. The challenged portions of the amendment create an irrebuttable, life-long presumption that Mr. Ganim, and others similarly situated, should not receive public campaign funding without providing a hearing or appeal process.  Because there is no hearing or appeal process, Mr. Ganim is unable to make an argument to the State as to why he should be allowed to apply for and receive CEP funding, taking into consideration important factors such as the nature of the prior bad acts and their relation to the State's interests, time elapsed since the crimes were committed, and rehabilitation.

51. Such a statutory scheme deprives Mr. Ganim of due process and equal protection under the Constitution. The Plaintiffs challenge those portions of the statute both facially and as applied.

**REQUEST FOR RELIEF**

Wherefore, Plaintiffs request that this Court:

a. Declare the challenged sections of the Statute unconstitutional;

b. Issue permanent injunctive relief barring Defendants from enforcing the sections of the statute challenged, in whole or in part;

c. Issue preliminary injunctive relief barring Defendants from enforcing the sections of

the statute challenged, in whole or in part;

d. Issue preliminary and permanent injunctive relief requiring the Defendants to allow the Plaintiffs to participate in the CEP;

e. Award Plaintiffs their reasonable attorney's fees and expenses pursuant to 42 U.S.C. § 1988, and

f. Grant any additional relief to which Plaintiffs are entitled.

Dated this 2nd day of August, 2017.

                                    Louis N. George (ct02192)
                                    Raymond M. Hassett (ct02175)
                                    David C. Yale (ct26912)
                                    Hassett & George, PC
                                    945 Hopmeadow Street
                                    Simsbury, CT 06070
                                    Tel. (860) 651-1333
                                    Fax. (860) 651-1888
                                    lgeorge@hgesq.com